IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| STINKER STORES, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CV 08-370-LMB |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM DECISION |
| NATIONWIDE AGRIBUSINESS | ) | AND ORDER |
| INSURANCE AND ORDER | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I. INTRODUCTION

This action is an insurance coverage dispute. Defendant Nationwide Agribusiness

Insurance Co. ("Nationwide") insured Plaintiffs[1] under a series of general commercial liability

policies and optional Employee Benefit Liability (EBL) endorsements. Plaintiffs made claims

for defense and coverage under the EBL endorsements for several lawsuits filed against them by

their former employees. Nationwide denied Plaintiffs both a defense and coverage for the

lawsuits. Plaintiffs bring claims against Nationwide alleging breach of contract and bad faith,

and seek declaratory relief.

The  Court has before it Defendant's Motion for Summary Judgment (Doc. 29),

Plaintiffs' Motion for Partial Summary Judgment (Doc. 40), Defendant's Motion to Strike

_____

[1]Plaintiffs include Fearless Farris Service Stations, Inc., Fearless Farris Service Stations, Inc., Deferred Compensation Plan ("the Plan"), Stinker Stations, Inc., successor in interest to Fearless Farris, two individuals who were/are co-owners, officers and employees of both Fearless Farris and Stinker Stations, Inc. and authorized to administer the Plan, and Westpoint Transportation, Inc., a wholly-owned subsidiary of Fearless Farris, Inc. Complaint, ¶¶ 1 - 4 (Doc. 1-2).

**MEMORANDUM DECISION AND ORDER  1**

Exhibits N and Q to Affidavit of Counsel In Support of Plaintiffs' Motion For Partial Summary Judgment (Doc 53), and Plaintiffs' Alternative Cross-Motion to Strike (Doc. 67).[2]  The Court heard oral argument on January 13, 2010, on the parties' motions for summary judgment which were taken under advisement, and has determined that oral argument will not assist it further in deciding the cross-motions to strike expert testimony which will be decided on the parties' written briefing and submissions.

After careful review of the record, the briefs and argument of counsel, the Court issues the following Memorandum Decision and Order in which Defendant's Motion for Summary Judgment is denied in part and granted in part, Plaintiff's Partial Motion for Summary Judgment is denied in part and granted in part, and the parties' cross-motions to strike are both denied.

## II.  BACKGROUND

### A.    Background of the Underlying Lawsuits Against Plaintiffs

The following background of the underlying lawsuits that were filed against Plaintiffs (for which Plaintiffs seek defense costs and indemnification in this instant action) is taken directly from the Findings of Fact and Conclusions of Law in one of the underlying cases, *Ted Roberts v. Fearless Farris Serv. Stations, Inc., et al.*, United States District Court, District of Idaho, Case No. 05-472-S-WFN, February 6, 2008:

> Prior to November 18, 2002, Fearless Farris Service Stations, Inc. ("Fearless") was owned by Farris S. Lind, Kent Lind and H. Kent Johnson ("Lind/Johnson"). Sometime in the 1980s, Fearless established a retirement plan, referred to as the Fearless Farris Service Stations, Inc. Deferred Compensation Plan ("Plan"). According to the parties, the only documents evidencing the Plan were certain letters

---

[2] Also pending is Plaintiffs' Motion For Leave to Amend to Add Causes of Action and to Seek Punitive Damages (Doc. 43).  This motion will be set for hearing as required under Idaho law when a party seeks to add a claim for punitive damages.  I.C. § 6-1604.

**MEMORANDUM DECISION AND ORDER  2**

and memoranda distributed to Plan participants over the years, or in some cases placed in company files. Apparently, Fearless did not consult any legal advisors in establishing or maintaining the Plan.

According to the letters and memoranda, the Plan underwent several changes over the years. On December 19, 1995, the company indicated that the company was continuing to invest money to assist the participants in their retirement. It went on to state that the Plan would pay to the qualified employee or his surviving beneficiary, upon reaching the retirement age of 65 and having completed a minimum of 20 years of service to the company, a monthly sum of 25% of the average of his/her last 5 years of service for a period of 15 years. In the case of an employee pre-deceasing the retirement age of 65 years, but still meeting the years of service requirement, the Company would pay to the surviving beneficiary 50% of the employee's last 5-year average income, paid monthly for 15 years. Also, at various times, Fearless purchased and maintained life insurance policies on each of the Plan participants.

On August 22, 2002, Lind/Johnson sold the Fearless operations through a Stock and Asset Purchase Agreement with Charshaw, Inc., Davis-Jones, Inc. and Joshnik LLC ("Jones/Davis"). The deal was finalized on November 18, 2002. The change in ownership led to substantial changes in the Plan. The Purchase Agreement provided for retention of the insurance policies on the lives of Lind/Johnson by Lind/Johnson, and the other life insurance policies remained among the assets of Fearless. Prior to the sale, the insurance policies had been pledged as collateral to a bank, but after the sale, Jones/Davis paid off the loan and the life insurance policies were released free and clear. Subsequent to the sale, Jones/Davis surrendered the insurance policies for their combined cash value in excess of $600,000. The funds were placed in the corporate accounts of Fearless.

In July 2003, Jones/Davis held meetings with Plan participants, and distributed a memorandum informing the Plan participants that the Plan was terminated.[3] Fearless also informed the Plan participants that Fearless had no financial obligation to Plan participants as a result of the Plan termination.

*Affidavit of Counsel in Support of Motion for Partial Summary Judgment* (Doc. 40-2) ("*Aff.*

*Counsel PMPSJ*"), Exh. E.

---

[3]Although the District Court Findings of Fact and Conclusions of Law quoted above characterize this letter as having *terminated the Plan*, the presiding judge later explains that "[t]hough called a "termination" some participants benefitted from an altered plan, while others near retirement received benefits under the Plan." *See Affidavit of Counsel in Support of Motion for Partial Summary Judgment* (Doc. 40-2) ("*Aff. Counsel PMPSJ*"), Exh. E.

**MEMORANDUM DECISION AND ORDER 3**

**B.     Plaintiffs' Insurance Coverage for Employee Benefit Liability.**

Plaintiffs were insured by three general commercial liability policies effective  March 1, 2003 to March 1, 2004 ("2003 Policy"), March 1, 2005 to March 1, 2006 ("2005 Policy") and March 1, 2007 to March 1, 2008 ("2007 Policy").  Each policy included optional EBL coverage endorsements which gave Plaintiffs continuous coverage from March 1, 2003 to March 1, 2008 generally for "negligent errors, acts or omissions" that occur "in the administration" of an employee benefit plan.

**C.     The Underlying Lawsuits And Nationwide's Response to Plaintiffs' Tender of Defense And Claims for Coverage.**

Four lawsuits were filed against Plaintiffs following Stinker's termination of the Plan, but the denial of defense and coverage is at issue in Plaintiffs' current complaint[4] in only two of these cases:

**1.     *Roberts v. Fearless Farris Service Stations, Inc., et al.,* CV-05-472-S-EJL ("*Roberts II*").**

Ted Roberts filed a lawsuit in this district court on November 18, 2005.  Roberts alleged only one claim titled "Claim For Benefits" which he brought under ERISA. *See Affidavit of Counsel in Support of Plaintiffs' Motion for Partial Summary Judgment* (Doc. 40-2)(hereafter "*Counsel Aff. PMPSJ*"), Exh. F.  Nationwide denied both a defense and coverage, and issued a coverage denial letter dated April 19, 2006, through coverage counsel.  *Counsel Aff. PMPSJ*, Exh. G.  The presiding judge in *Roberts II* subsequently found that the new owners, Stinker and The Plan had violated fiduciary duties owed to Roberts under ERISA in maintenance and

---

[4]  The other two lawsuits are *Lawrence v. Fearless Farris Serv. Stations, Inc.*, CV03-313-S-LMB (*"Lawrence"*) and *Roberts v. Fearless Farris Service Stations, Inc., et al.,* CV-OC-03-11729 (*"Roberts I"*).  These earlier cases are not relevant to the decision in this action.

**MEMORANDUM DECISION AND ORDER  4**

termination of the Plan, and were liable to him for his vested benefits under the Plan.

Accordingly, judgment was entered in favor of Roberts and Stinker was ordered to create and

fund an annuity for Roberts.  Stinker appealed, and the case settled while on appeal.

> **2.      *Brasley v. Fearless Farris Service Stations, Inc., et al.*, CV 08-173-S-BLW
> (*"Brasley"*).**

Edward Brasley filed a Class Action Complaint on April 17, 2008, on behalf of all present

or former employees of Stinker who are or were Plan participants.   In his original complaint,

Brasley alleged four claims against Plaintiffs under ERISA which include breach of fiduciary

duties, a claim for benefits, failure to provide information and sought equitable relief.  Stinker

tendered the suit to Nationwide on May 6, 2008.   Nationwide denied Plaintiffs a defense and

coverage, again by letter through coverage counsel, on August 14, 2008.

Brasley filed an Amended Class Action Complaint on September 8, 2008, adding Todd

Wayment, Betty Newell, Vernon Elliott and Katherine Ryan as named plaintiffs.  Stinker

forwarded the Amended Complaint to Nationwide on September 10, 2008, but heard nothing

further from Nationwide on defense or coverage for that action.   Stinker negotiated a settlement

with Katherine Ryan in the amount of $120,000.  The remaining *Brasley* claims were recently

tried to Judge B. Lynn Winmill and as of this date, his ruling has not been issued.

It is undisputed that Nationwide has paid no defense costs, attorney fees or settlement

amounts to Plaintiffs for either of these two lawsuits.  Plaintiffs' claims made in this instant action

against Nationwide allege breach of contract, bad faith and entitlement to declaratory relief under

the 2003 and 2005 Policies for the *Roberts II* litigation, the 2003 and 2007 Policies for the

*Brasley* litigation, and for an award of  attorneys' fees and costs.

**MEMORANDUM DECISION AND ORDER  5**

## III.  MOTIONS FOR SUMMARY JUDGMENT

Nationwide seeks summary judgment in its favor on all claims made against it in this instant action on the grounds that the policy language is clear in all policies that Plaintiffs are not entitled to coverage for any of the underlying lawsuits.  On the other hand, Plaintiffs seek partial summary judgment in their favor on their claims for declaratory judgment and breach of contract based on Nationwide's refusal to at least provide a defense.  Plaintiffs argue that either the policies actually do provide coverage, or the terms in the policies are at least ambiguous, and therefore, Nationwide's duty to defend was clear under Idaho law.

Both parties filed motions to strike the expert testimony that the parties submitted in support of their respective motion for summary judgment.  These evidentiary objections will be addressed first.

### A.   Cross Motions to Strike Expert Testimony

Nationwide challenges the admissibility of Plaintiffs' expert reports on several grounds. First, Nationwide objects to the reports because they are not sworn statements as required by Fed. R. Civ. P. 56(e).  After carefully considering the reports, and the applicable legal standards, the Court is satisfied that Plaintiffs' subsequently filed sworn statements adequately remedied the procedural deficiencies of the original filings.  *See Maytag Corp. v. Electrolux Home products, Inc.,* 448 F. Supp.2d 1034, 1046 (N.D. Iowa 2006) (collecting cases); *see also*.  *School District No. 1J, Multnomah County, OR v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (citation omitted) ("When a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency.")

**MEMORANDUM DECISION AND ORDER  6**

Second, Nationwide contends that the expert opinions do not comport with Fed. R. Evid.

702.  This rule, governing testifying expert qualifications generally, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

After careful review of Waldner's report and the record, the Court sees no basis upon which to conclude that she is not qualified to render her expert opinion in this case, and that her opinions, discussed more fully below, will be helpful to the jury in understanding relevant issues of employee benefit administration and ERISA, and the application of relevant EBL policy language to the day-to-day practice of employee benefits administration.

Nationwide further objects to Waldner's and Tom Roberts' opinions because the experts fail to cite legal authorities for their opinions.  Nationwide provides no authority for this argument or evidence that the information these experts relied upon is not that which is commonly relied upon by other experts within the industry.   In the Court's view, Nationwide's objection goes more to the weight of the reports and credibility of the experts, rather than to the admissibility of their opinions.

Third, Nationwide objects to Plaintiffs' experts' opinions on the ground that the experts invade the province of the Court by testifying to the ultimate issues of law in this case by providing opinions on coverage.  "It is well-established ... that expert testimony concerning an ultimate issue is not per se improper."  *Hangarter v. Provident Life and Accident Insur. Co.,* 373

**MEMORANDUM DECISION AND ORDER  7**

F.3d 998, 1016 (9th Cir. 2004) (*citing Maukhtar v. Cal. State Univ., Hayward*, 299 F3d 1053, 1066 n. 10 (9th Cir. 2002)). "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a).  "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.  Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)(*citing Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.2004) (internal citations and quotation marks omitted); Fed. R. Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue.")).

This Court agrees that some of Waldner's and Roberts' opinions may embrace the legal questions of the meaning and interpretation of the EBL endorsement, or whether the claims against Plaintiffs were covered by the endorsement.  *See* Waldner Affid. (Exh. N), Sec. E in part; Roberts' Affid., (Exh. Q), ¶¶ 25, 26, 32, 35 & 41.  If this testimony were offered solely for that purpose, it may be inadmissible. *See McHugh v. United States Auto. Assoc.*, 164 F.3d 451, 454 (9th Cir. 1999).  However, the testimony is admissible for other purposes in this case.

Specifically, this testimony is relevant as foundation to the experts' opinions as to whether Nationwide's refusal to provide either a defense or indemnification was done in bad faith.  The experts must set forth Nationwide's duty in interpreting the contract, and their opinion that Nationwide did or did not comply with the duty, before the experts can offer any opinion as to whether or not Nationwide's conduct was reasonable and/or breached any applicable industry

**MEMORANDUM DECISION AND ORDER  8**

standards.  Accordingly, although the experts' testimony embraces ultimate issues for the Court, it is nonetheless admissible for other relevant purposes.

Furthermore, the majority of the experts' testimony does not merely address the legal meaning of the contracts but is admissible testimony regarding Nationwide's duty to defend and/or indemnify, and whether Nationwide committed bad faith.  For example, Waldner's testimony is largely focused on explaining the claims against the Plaintiffs, how they are or are not administrative acts, and clarifying ERISA in a manner that is helpful in determining whether the applicable policy coverage provision or exclusion may apply.  Roberts discusses the insurance industry standards, Nationwide's internal Best Practices guidelines and explains Nationwide's internal documentation regarding the Plaintiffs' claims.  Further, Roberts offers his opinion as to how he believes Nationwide acted unreasonably by, among other things, falling below the industry standards and acting contrary to its own Best Practices guidelines in handling these claims.

With the foregoing in mind, the Court declines to strike the experts' testimony.  The Court will and has considered the testimony of the two experts only to the extent that it is admissible and does not constitute merely an opinion regarding the meaning of the plain language of the policies.  *See McHugh v. United States Auto. Assoc.*, 164 F.3d 451, 454 (9th Cir. 1999).

Plaintiffs move to strike Nationwide's expert affidavits only if the Court grants Nationwide's motion to strike, and on the same grounds.  Because Defendant's Motion to Strike is denied, Plaintiffs' alternative motion is moot and therefore denied.  Obviously, the same

**MEMORANDUM DECISION AND ORDER  9**

standards of consideration apply to Nationwide's expert testimony as discussed above regarding Plaintiffs' expert testimony.

**B.      Standard of Review for Summary Judgment**

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.*  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

**MEMORANDUM DECISION AND ORDER  10**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

**C.    Nationwide's Motion for Summary Judgment on Its Duty to Indemnify**

Whether the Nationwide policies provided coverage for the claims alleged against the Plaintiffs in each underlying lawsuit is a threshold question for both parties' summary judgment motions, and will be addressed first.

**1.    Insurance Contract Interpretation Generally**

The parties agree on the general law which the Supreme Court of Idaho fully addressed in *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751(Idaho 2005):

> In interpreting an insurance policy, where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used. . . . This Court construes insurance contracts in a light most favorable to the insured and in a manner which will provide full coverage for the indicated risks rather than to narrow its protection. . . . In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities. . . . This determination is a question of law. . . .In resolving this question of law, the Court must construe the policy "as a whole, not by an isolated phrase. . . . An insurance policy provision is ambiguous if it is reasonably subject to conflicting interpretations. . . . If the Court finds any

**MEMORANDUM DECISION AND ORDER  11**

ambiguities in the insurance policy, they must be construed against the insurer. . . . If a policy is found to be ambiguous, then its interpretation is a question of fact.

*Cascade Auto Glass, Inc.,* 115 P.3d at 753- 54 (internal citations and quotations omitted); *see also*

*Counties Risk Management Program Underwriters v. Northland Ins.*, 205 P.3d 1220 (Idaho 2009).

Further, "the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred." *Clark v. Prudential Property and Casualty Ins. Co.*, 66 P.3d 242, 244 (Idaho 2003).

**2.    Coverage for "negligent acts, errors or omissions" that occur "in the administration of the employee benefits programs" under the EBL endorsements generally.**

Nationwide argues that the EBL endorsements do not provide coverage because coverage is afforded (1) for "negligent acts, errors or omissions", rather than intentional acts, and (2) that occur "in the administration of" an employee benefit plan.  Nationwide denied Plaintiffs a defense and coverage because, and continues to maintain that, Plaintiffs' acts that are complained of in *Roberts II* and *Brasley* meet neither requirement.

**a.    "Negligent acts, errors and omissions"**

Nationwide denied Plaintiffs both coverage and a defense for all of the claims made against them by employees on the grounds that the EBL endorsements cover only "negligent acts, errors and omissions" and do not cover the type of acts complained of in *Roberts II* and *Brasley*.  Nationwide has maintained that both of these lawsuits "involve allegations of intentional conduct by Stinker in deciding to terminate the plan, denying benefits to plan participants, converting life insurance policies, and failing to provide information regarding the plan." *Memorandum in Support of Motion for Summary Judgment*, p. 41 (Docket No. 30, at p. 45).  Nationwide further contends that the intentional, discretionary decision-making involved in

**MEMORANDUM DECISION AND ORDER  12**

those acts are not "negligent acts, errors or omissions" that the EBL endorsements are intended to cover.

After careful consideration of the policy language and the case law urged by both parties, the Court concludes that the reasonable interpretation of the language "negligent acts, errors or omissions" in the policies at issue in this action is conduct that may include decisions which are discretionary and intentionally made, but may also nonetheless be negligent decisions. *Accord Maryland Casualty Co.*, 621 F. Supp. 410 (D. N.J. 1985) (denying summary judgment on several claims because questions of fact exist as to whether or not claims of harmful decision-making were negligent or intentional). Accordingly, Nationwide is not entitled to judgment as a matter of law on this issue.

### b.     "In The Administration Of"

Next, Nationwide denied coverage and a defense on the ground that the language "in the administration of" includes only ministerial and perfunctory functions and not the discretionary decision to terminate an employee benefit plan. "Administration" is specifically defined in the policies in this case and the definition is not expressly limited only to ministerial or clerical actions. Although many of the acts specified under the definition of "administration" may be ministerial, others may be read more broadly. One definition of "administration" includes "effecting enrollment, termination or cancellation of employees under employee benefit program." The term "effecting" includes "to cause."[5] Accordingly, under this definition, and reading the coverage provisions of the policies broadly as the Court must, this language

---

[5] See http://www.merriam-webster.com/dictionary/effect ("1: to cause to come into being; 2 a: to bring about often by surmounting obstacles . . . .b: to put into operation. . . .")

**MEMORANDUM DECISION AND ORDER  13**

reasonably includes negligent acts, errors or omissions which cause the enrollment, termination or cancellation of employees under employee benefit programs.   A decision to terminate an employee benefit plan may qualify as a negligent act, error or omission which causes the termination or cancellation of an employee under an employee benefit plan.  *Accord Medford v. Argonaut Ins. Group.*, 2007 WL 4570713, at *4 (D. Or. 2007). [6]

The Court has carefully reviewed and studied the authorities upon which Nationwide relies in support of its argument, and finds no basis under either the case law or the policies in this case to restrict the definition of "administration" to the narrow interpretation Nationwide proposes.  Thus, the Court concludes that Nationwide is not entitled to judgment as a matter of law on this issue.

> **3.      The 2003 Policy EBL endorsement - Nationwide is not entitled to judgment as a matter of law on its duty to indemnify Plaintiffs for *Roberts II* or *Brasley*.**

The Court is of the opinion, in consideration of the allegations set forth in the *Roberts II* complaint, Judge Nielson's Findings of Fact and Conclusions of Law, the policy language, the relevant case law and this Court's conclusions and analysis above, that genuine issues of material fact exist regarding whether Plaintiffs' conduct in terminating the Plan is a covered act under the 2003 Policy EBL endorsement.  The Court further concludes that *Brasley* alleges

---

[6] Nationwide argued during the hearing on these pending motions that this Court could not adopt the reasoning in *Medford, supra,* because *Medford* rejects the reasoning of *Maryland Casualty, supra,* which it maintains the Idaho courts adopted in *Intermountain Gas*, *supra*, and is therefore controlling precedent. A careful reading of  *Intermountain Gas,* however, makes it clear that the decision addresses and relies upon *Maryland Casualty* only with respect to, and only to the extent, whether the acts complained of in that case were 'negligent'; it does not address the definition of "administration" or in any way adopt the *Maryland Casualty* court's narrow interpretation of the term.

**MEMORANDUM DECISION AND ORDER  14**

claims beyond the termination of the Plan which may fall within coverage as "negligent acts, errors or omissions," that occur "in the administration of" the Plan and that there exist genuine issues of material fact regarding actual coverage which precludes granting summary judgment in favor of Nationwide at this time.

The Court is also of the view that Nationwide is not entitled to judgment as a matter of law in its favor on the grounds that the lawsuits are excluded from coverage under the 2003 endorsement as "any dishonest, fraudulent, criminal or malicious act," or as "any claim based upon the insured's failure to comply  with any law concerning workers compensation, unemployment insurance, social security, disability benefits of *any similar law,*" 2003 Policy EBL endorsement, III.B.(1) & (4) (emphasis added).

Accordingly, Nationwide's motion for summary judgment on Plaintiffs' claims based on Nationwide's failure or refusal to indemnify for *Roberts II* or *Brasley* under the 2003 Policy is denied.

> **2.     The 2005 Policy EBL endorsement  - Nationwide is entitled to judgment as a matter of law on its duty to indemnify *Roberts II*.**

The 2005 policy covers claims made within the Policy Period of March 1, 2005 to March 1, 2006, and covered acts that occurred within the retroactive date of March 1, 2004.   Having carefully reviewed the record, the Court concludes that there are no genuine issues of material fact in dispute, and that the acts giving rise to damages against Plaintiffs in *Roberts II* occurred before the retroactive date of the policy coverage and are therefore not covered under the 2005 policy.  Accordingly, Nationwide is entitled to judgment as a matter of law in its favor on Plaintiffs' claims for breach of contract and declaratory judgment based on Nationwide's failure to indemnify Plaintiffs for *Roberts II* under the 2005 Policy EBL endorsement.

**MEMORANDUM DECISION AND ORDER  15**

3.      **The 2007 Policy EBL endorsement - Nationwide is not entitled to judgment as a matter of law on its duty to indemnify Plaintiffs for Brasley.**

a.      **Coverage provisions under the 2007 Policy EBL endorsement.**

In order to be covered under the 2007 Policy EBL endorsement, *Brasley* must make claims for damages based on an "act, error or omission, . . . negligently committed in the administration of [the] employee benefit plan."  2007 Policy EBL Endorsement, Sec. A.1.b(1). It is undisputed that the claims must be made within the Policy period of March 1, 2007 to March 1, 2008, and the acts giving rise to the damages must have occurred after the retroactive date of March 1, 2004.

This Court has addressed and rejected Nationwide's general  argument with respect to coverage for *Brasley* under the 2003 Policy endorsement.  Consistent with that ruling, the ruling here is the same with respect to the 2007 Policy EBL endorsement.

The Court further finds there is at least one claim in the *Brasley* action which clearly falls within the coverage period – that of failure to provide information in October 2007.

Accordingly, Nationwide's motion on this ground is denied.

b.      **Exclusions under the 2007 Policy EBL endorsement.**

The Court concludes that neither the complaint nor the court findings in *Roberts II*, or the complaint in *Brasley*, support the argument that the claims made are "[d]amages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission committed by any insured including the willful or reckless violation of any statute."

The Court further concludes that whether or not Nationwide's Notice complies with the requirements of § 41-1842(5) is a genuine issue of material fact and that the record is not complete on this issue.  Accordingly, the Court concludes that Nationwide's Notice raises

**MEMORANDUM DECISION AND ORDER  16**

genuine issues of material fact as to Nationwide's compliance with I.C. § 41-1842(5) and the enforceability of the contract modifications contained in the 2005 and 2007 EBL endorsements.

Alternatively, if the exclusions are enforceable, the Court further concludes that whether these exclusions preclude coverage under the 2007 Policy for the claims made against Plaintiffs in *Brasley* raises genuine issues of material fact.  Accordingly, Nationwide's motion for summary judgment on this ground is denied.

### 4.      Conclusion

There are genuine issues of material fact existing regarding whether or not Nationwide breached its duty to indemnify the Plaintiffs' for the judgment in *Roberts* II, or that is has a duty to indemnity the Plaintiffs in *Brasley* under the 2003 Policy or the 2007 Policy.

However, Nationwide is entitled to judgment as a matter of law regarding claims based on any duty to indemnify Plaintiffs for *Roberts II* under the 2005 Policy.

### D.      Cross-Motions for Summary Judgment on Nationwide's Duty to Defend

Nationwide also filed a motion summary judgment on Plaintiffs' claims for breach of contract and declaratory judgment based on Nationwide's failure to provide Plaintiffs a defense in *Roberts II* and *Brasley.*

Plaintiffs move for partial summary judgment on their claims for declaratory relief and breach of contract for Nationwide's breach of its duty to defend *Roberts I*, *Roberts II* and *Brasley*.

Plaintiffs have not made any claims in this lawsuit based on Nationwide's failure to defend *Roberts I*.  The only *Roberts* action mentioned in Plaintiffs' complaint is *Roberts II*.

**MEMORANDUM DECISION AND ORDER  17**

Accordingly, Plaintiffs' motion is denied with respect to *Roberts I*, and the motion will be considered below with respect to *Roberts II* and *Brasley*.

       **1.**      **Idaho Law on Duty to Defend**

The parties agree on the guiding principles of the duty to defend. It is undisputed that "[u]nder Idaho law and consistent with other states, an insurer's duties to defend and indemnify are separate duties. The duty to defend is broader than the duty to indemnify. The duty to defend is triggered if the third-party's complaint reveals a potential for liability that would be covered by the insured's policy.*" Idaho Counties Risk Management Program Underwriters v. Northland Ins.*, 205 P.3d 1220, 1224 (Idaho 2009)(*citing Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 375, 48 P.3d 1256, 1264 (2002) (citations omitted)).

In *County of Kootenai v. Western Casualty and Surety Co.*, 113 Idaho 908, 750 P.2d 87 (1988), the Supreme Court of Idaho held:

> [t]he duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy. [Emphasis original.]

*Id.* at 910, 750 P.2d at 89, *quoting State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D.Id.1986); *see also Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440 (Idaho 1984)*; Standlee v. St. Paul Fire & Marine Ins. Co.,* 693 P.2d 1101 (Idaho Ct. App. 1984); *Maxson v. Farmers Ins. of Idaho, Inc.*, 107 Idaho 1043, 695 P.2d 428 (Ct.App.1985).

In deciding whether the duty to defend exists, the reviewing court must look at the "full breadth" of the plaintiff's claims, and not just at the words plead. *Hirst, supra.* So long as the complaint describes conduct that could foreseeably fall under the policy, a duty to defend exists. *Pendlebury v.Western Casualty and Surety Co.*, 406 P.2d 129 (Idaho 1965).

**MEMORANDUM DECISION AND ORDER  18**

In addition, the Idaho Court of Appeals has held, "[i]ndeed, the duty to defend clearly exists so long as there is a genuine dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts." *Black v. Fireman's Fund American Ins. Co.*, 767 P.2d 824, (Idaho App. 1989).  The duty, however, is not absolute.  *Id.*  The Supreme Court of Idaho gives clear guidance to an insurance company in how to proceed when it believes there is an exclusion or basis for non-coverage and its duty to defend:

> The proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit.  At the same time, if the insurer believes that the policy itself provides a basis, i.e., an exclusion, for non-coverage, it may seek declaratory relief. However, this does not abrogate the necessity of defending the lawsuit until a determination of non-coverage is made. The insurer should not be allowed to "guess wrong" as to the potential for coverage.

*County of Kootenai v. Western Casualty and Surety Co.*, 113 Idaho at 911, 750 P.2d at 90.

> **2.      Nationwide breached its duty to defend for both *Roberts II* and *Brasley* under the 2003, 2005 and 2007 endorsements.**

>> **a.      Duty to defend *Roberts II* and *Brasley* under 2003 Policy EBL endorsement.**

With respect to the 2003 endorsement, Nationwide denied a defense to the insureds on all of the same grounds for which it seeks judgment in its favor regarding coverage.  Nationwide contended that the lawsuits were each based on the decision made to terminate the Plan, that this decision was not a covered negligent act, and nonetheless, coverage was excluded under the exclusions for "dishonest, fraudulent, criminal or malicious act, or to libel, discrimination or humiliation" and for violating workers' compensation "or other similar laws."  As discussed above, this Court rejected Nationwide's contention that the decisions involved in terminating the Plan were necessarily 'intentional' versus 'negligent' and concluded that questions of fact that

**MEMORANDUM DECISION AND ORDER  19**

must be resolved in the underlying litigation exist regarding coverage.  The Court also denied

Nationwide's motion on the grounds that the exclusions clearly applied on the face of the

complaints and plain language of the policies.

Accordingly, the Court concludes that the *Roberts II* and *Brasley* complaints alleged

claims that fell within potential coverage of the 2003 Policy EBL endorsement, and that

accordingly, Nationwide breached its duty to defend on this basis.

> **b.    Duty to defend *Roberts II* under the 2005 Policy EBL endorsement.**

The Court determined above that Nationwide has no duty under the 2005 endorsement to

indemnify for the damages Plaintiffs incurred in *Roberts II*  based on Judge Nielson's Findings of

Facts and Conclusions of Law.  The duty to defend is, however, broader than the duty to

indemnify.  The question presented in this case is whether the *Roberts II* complaint alleged

claims potentially covered by the policies, and whether Nationwide acted consistently with its

duty under Idaho law.  *See County of Kootenai v. Western Casualty and Surety Co.*, 113 Idaho at

911, 750 P.2d at 90.

Nationwide denied a defense to Plaintiffs in *Roberts II* under the 2005 Policy

endorsement on the grounds that *Roberts II* did not involve any covered claims: (1)  the conduct

complained of in *Roberts II* was not an intentional act not covered by the Policy; (2) the conduct

complained of did not occur "in the administration of" the employee benefit plan; (3) the acts

giving rise to the claims against the Plaintiffs all occurred prior to the retroactive date of the

2005 EBL endorsement coverage; and (4) coverage was excluded as (a) damages arising out of

intentional, dishonest, etc. conduct, (b) damages arising out of insufficiency of funds, and (c)

damages arising out of liability imposed as a fiduciary under ERISA.

**MEMORANDUM DECISION AND ORDER  20**

The Court addressed Nationwide's first two arguments above in its discussion regarding Nationwide's duty to indemnify Plaintiffs for *Roberts II* under the 2003 Policy, and concluded that there are genuine issues of fact either in dispute or not present in this record as to whether or not the conduct complained of was a "negligent act, error or omission" which occurred "in the administration of" the Plan.  The same rationale, and thus the court's ruling, applies under the 2005 endorsement.

Likewise, the Court has concluded regarding Nationwide's fourth argument that: (1) the exclusion for damages arising out of intentional, dishonest, etc. conduct clearly did not apply to either *Roberts II* or *Brasley*, and (2) that questions of fact exist regarding whether the exclusions for damages arising out of insufficiency of funds and damages arising out of liability imposed as a fiduciary under ERISA, apply to preclude coverage for *Brasley*.  The same findings apply to the application of these latter two exclusions to *Roberts II* because the basis for which Nationwide contends the exclusions apply to *Brasley* is the same as in *Roberts II*.   Again, the discussion and ruling will not be repeated here, other than that the Court finds that none of the exclusions provide a basis for Nationwide's refusal to provide a defense to Plaintiffs in *Roberts II.*

With respect to Nationwide's third contention regarding the retroactive coverage date, Roberts made allegations of conduct in the administration of the Plan that may have fallen within the 2005 Policy coverage period.  It is undisputed that Nationwide did no further investigation into this complaint according to the record, and denied Plaintiffs a defense.  The record at this point, however, is insufficient for the Court to decide as a matter of law whether or not Nationwide breached its duty to provide a defense for *Roberts II.*  As such, the Court denies

**MEMORANDUM DECISION AND ORDER  21**

Plaintiffs' motion for summary judgment on this issue and concludes that whether Nationwide breached its duty to provide a defense for *Roberts II* under the 2005 policy endorsement raises genuine issues of material fact.

> ### c.    Duty to Defend *Brasley* Under the 2007 Policy EBL Endorsement.

The Court concluded above that there are genuine issues of material fact in dispute regarding whether the *Brasley* claims are covered under the 2007 Policy.  The Court also decided, however, that even if these additional exclusions are found to be effective, there nonetheless exist genuine issues of material fact which must be resolved in the underlying law suit before coverage can be determined.  As such, the Court concludes that there is potential for coverage under the 2007 policy endorsement, and that Nationwide has breached its duty to provide Plaintiffs with a defense in *Brasley* under the 2007 Policy.

> ### d.    Conclusion

Nationwide breached its duty to provide Plaintiffs a defense for the *Roberts II* and *Brasley* claims under the 2003 Policy, and for *Brasley* under the 2007 Policy.  The Court further concludes that genuine issues of material fact exist as to whether Nationwide breached its duty to provide a defense to the Plaintiffs for *Roberts II* under the 2005 Policy.

## E.    Defendant's Motion for Summary Judgment Regarding Bad Faith

Nationwide moves for summary judgment on Plaintiffs' claims of bad faith relating to Nationwide's refusal to provide a defense or coverage for the lawsuits.

> ### 1.    Idaho Law on Bad Faith

To make a claim for bad faith, Plaintiffs must prove that  (1) Nationwide intentionally and unreasonably denied or withheld defense and coverage; (2) the claims were not fairly

**MEMORANDUM DECISION AND ORDER  22**

debatable; (3) the denial of defense or failure to cover was not the result of a good faith mistake; and (4) the resulting harm is not fully compensable by contract damages. *Robinson v. State Farm Mut. Ins. Co.,* 45 P.3d 829, 832 (Idaho 2002). "The term 'fairly debatable' means that at the time the claim was under consideration, there existed a legitimate question or difference of opinion over the eligibility, amount or value of the claim." *Id.* at 833-34.

The central issue in a bad faith claim is whether the insurer acted reasonably. *See Hangarter v. Provident Life and Accident Ins. Co.,* 373 F.3d 998, 1009-10 (9th Cir. 2004); *State Farm Fire & Casualty v. Trumble*, 663 F. Supp. 317 (D. Idaho 1987).

> **2.    Whether Nationwide acted in bad faith in denying Plaintiffs' defense or coverage is a question of fact.**

Nationwide argues that the "record is clear" that it acted reasonably in deciding to deny both defense and coverage. Nationwide also contends that it thoroughly investigated the claims submitted by reviewing the complaints and the policy language, believed that there was no coverage, but nonetheless sought legal advice to be sure because "it recognized the complex legal issues" involved. (Doc. 30, at p. 64). Coverage counsel confirmed Nationwide's initial impression. Nationwide asserts that it made no decision regarding coverage until after it received coverage counsel's opinion. In addition, Nationwide submits two additional expert's affidavits testifying that Nationwide's conduct in denying both defense and coverage for the underlying lawsuits was reasonable. On the other hand, Plaintiffs present expert testimony that neither Nationwide's decisions relating to defense nor to denial of coverage were reasonable under the industry standards, or even under Nationwide's own internal policies.

Upon this existing record, and in light of the competing affidavits which the Court may not weigh evidence, resolve credibility of the affiants, or reconcile inconsistencies at this stage

**MEMORANDUM DECISION AND ORDER  23**

of the proceedings, the decision of whether Nationwide committed bad faith in denying defense or coverage raises genuine issues of material fact which preclude granting the motion for summary judgment.

Accordingly, with the foregoing in mind, Defendant's Motion for Summary Judgment on Plaintiffs' bad faith claims is denied.

## V.  CONCLUSION

Defendants' Motion to Strike Plaintiffs' expert affidavits is denied.  Plaintiffs' alternative cross motion to strike is deemed moot, and is also denied.

Defendant's Motion for Summary Judgment is granted in part and denied in part.  It is granted with respect to Plaintiffs' claims for judgment based on Nationwide's duty to indemnify *Roberts II* under the 2005 Policy endorsement; it is denied in all other respects.  Defendant Nationwide is entitled to judgment as a matter of law, in part (claim of breach of duty to indemnify), on Plaintiff's Second Cause of Action (Breach of Contract - Roberts Action - 2005 Policy) and Sixth Cause of Action (Declaratory Relief - Roberts Action 2005 Policy).

Plaintiffs' Motion for Partial Summary Judgment is denied in part and granted in part.  It is denied with respect to any alleged claim for judgment based on *Roberts I* which is not before this Court at this time.  Plaintiff's Motion is granted with respect to Plaintiffs' claims for breach of contract and for declaratory judgment based on Nationwide's breach of its duty to defend the *Roberts II* and *Brasley* actions under the 2003 and 2007 policies.  Plaintiffs are therefore entitled to judgment as a matter of law in part (regarding Nationwide's breach of its duty to defend) on Plaintiffs' First Cause of Action (Breach of Contract - Roberts Action - 2003 Policy), Fifth Cause of Action (Declaratory Relief -Roberts Action- 2003 Policy), Seventh Cause of Action (Breach of Contract - Brasley Action - 2003 Policy), Eighth Cause of Action (Breach of Contract -

**MEMORANDUM DECISION AND ORDER  24**

Brasley Action - 2007 Policy), Eleventh Cause of Action (Declaratory Relief - Brasley Action -

2003 Policy) and Twelfth Cause of Action (Declaratory Relief - Brasley Action - 2007 Policy).

Plaintiffs' Motion for Partial Summary Judgment is denied with respect to Nationwide's

breach of its duty to provide a defense to Plaintiffs in *Roberts II* under the 2005 Policy.

Accordingly, Plaintiffs are not entitled to judgment as a matter of law on their Second Cause of

Action (Breach of Contract - Roberts Action - 2005 Policy) or their Sixth Cause of Action

(Declaratory Relief - Roberts Action - 2005 Policy).

## VI.  ORDER

Consistent with the foregoing Memorandum Decision,

IT IS HEREBY ORDERED the Defendant's Motion for Summary Judgment (Doc. 29) is

GRANTED in part, and DENIED in part as follows:

> 1)      Defendant's Motion for Summary Judgment is granted is granted with respect to
>
> Plaintiffs' claims for judgment based on Nationwide's alleged breach of its duty
>
> to indemnify *Roberts II* under the 2005 Policy endorsement; it is denied in all
>
> other respects.  Accordingly, Defendant Nationwide is entitled to judgment as a
>
> matter of law, in part (regarding claim of breach of duty to indemnify), on
>
> Plaintiff's Second Cause of Action (Breach of Contract - Roberts Action - 2005
>
> Policy) and Sixth Cause of Action (Declaratory Relief - Roberts Action 2005
>
> Policy).

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment

(Doc. 40) is DENIED in part and GRANTED in part as follows:

> 1)      Plaintiffs' Motion for Partial Summary Judgment is denied with respect to any
>
> alleged claim for judgment based on *Roberts I* as there are no allegations in
>
> Plaintiffs' complaint before the Court regarding *Roberts I*.

**MEMORANDUM DECISION AND ORDER  25**

2)     Plaintiff's Motion is granted with respect to Plaintiffs' claims for breach of contract and for declaratory judgment based on Nationwide's breach of its duty to defend the *Roberts II* and *Brasley* actions under the 2003 and 2007 policies.

3)     Plaintiffs are entitled to judgment as a matter of law in part (Nationwide's breach of its duty to defend) on Plaintiffs' First Cause of Action (Breach of Contract - Roberts Action - 2003 Policy), Fifth Cause of Action (Declaratory Relief -Roberts Action- 2003 Policy), Seventh Cause of Action (Breach of Contract - Brasley Action - 2003 Policy), Eighth Cause of Action (Breach of Contract - Brasley Action - 2007 Policy), Eleventh Cause of Action (Declaratory Relief - Brasley Action - 2003 Policy) and Twelfth Cause of Action (Declaratory Relief - Brasley Action - 2007 Policy).

4)     Plaintiffs' motion is denied with respect to Nationwide's alleged breach of its duty to provide a defense to Plaintiffs in *Roberts II* under the 2005 Policy.

5)     Plaintiffs are not entitled to judgment as a matter of law on their Second Cause of Action (Breach of Contract - Roberts Action - 2005 Policy) or their Sixth Cause of Action (Declaratory Relief - Roberts Action - 2005 Policy).

IT IS FURTHER ORDERED that Defendant's Motion to Strike Exhibits N and Q to Affidavit of Counsel in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 53) is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' Alternative Cross-Motion to Strike (Doc. No. 67) is DENIED as moot;

IT IS FURTHER ORDERED that counsel shall jointly contact law clerk, Merritt Dublin at (208) 334-1360 within seven (7) days of entry of this Order for the purpose of determining a

**MEMORANDUM DECISION AND ORDER  26**

mutually convenient date for the Court to hear Plaintiffs' Motion For Leave to Amend

Complaint to Add Additional Causes of Action And To Seek Punitive Damages (Doc. No. 43).



DATED:  **March 31, 2010**.

Honorable Larry M. Boyle
United States Magistrate Judge