IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| STINKER STORES, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CV 08-370-LMB |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM DECISION |
| NATIONWIDE AGRIBUSINESS | ) | AND ORDER |
| INSURANCE AND ORDER | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Court has before it Plaintiffs' Motion For Leave to Amend to Add Causes of Action and to Seek Punitive Damages (Docket No. 43). The Court heard oral argument on April 20, 2010, and took the motion under advisement. After careful review of the record and considering each of the parties' arguments, the Court issues the following Memorandum Decision and Order.

## BACKGROUND

**A.   Factual Background**

This action is an insurance coverage dispute. Plaintiffs[1] were insured by Defendant Nationwide Agribusiness Insurance Co. ("Nationwide") under several general commercial liability policies with optional Employee Benefit Liability (EBL) endorsements. The Policies

---

[1] Plaintiffs include Fearless Farris Service Stations, Inc., Fearless Farris Service Stations, Inc., Deferred Compensation Plan ("The Plan"), Stinker Stations, Inc., successor in interest to Fearless Farris, two individuals who were/are co-owners, officers and employees of both Fearless Farris and Stinker Stations, Inc. and authorized to administer The Plan, and Westpoint Transportation, Inc., a wholly-owned subsidiary of Fearless Farris, Inc. Complaint, ¶¶ 1 - 4 (Docket No. 1-2).

Memorandum Decision and Order - 1

are referred to and described in Plaintiffs' Complaint, and hereafter, as the 2003 Policy, 2005 Policy and 2007 Policy.  *See Complaint*, ¶¶ 22, 27 & 55.

Plaintiffs were sued by several former employees and made claims for a defense and indemnity for the lawsuits under the various allegedly applicable EBL endorsements.  The first lawsuit filed was *Lawrence v. Fearless Farris Serv. Stations, Inc.*, CV03-313-S-LMB ("*Lawrence*").  Lawrence asserted two causes of action - interference with ERISA rights, and a claim for benefits.  Nationwide defended the lawsuit under a reservation of rights agreement.  Nationwide denied Plaintiffs both a defense and coverage for the three subsequent lawsuits lawsuits.

The first of these subsequent lawsuits was *Roberts v. Fearless Farris Service Stations, Inc., et al.,* CV-OC-03-11729 (*"Roberts I"*).  Roberts filed the lawsuit on November 5, 2003, alleging wrongful termination and that "as a result of the wrongful termination," he was "entitled to be paid a promised Deferred Compensation Plain which the Company had in place with an approximate value of $300,000."  *Roberts I* Complaint, (Docket No. 40-3, at p. 37).  Nationwide denied Plaintiffs' tender of *Roberts I* on November 16, 2003.  (Docket No. 41-1, page 35).

Prior to trial, the *Roberts I* parties agreed to try only the wrongful termination claim, and not the claim for benefits.  The jury found in Plaintiffs' favor on the wrongful termination claim, and, accordingly, that Roberts was entitled to no damages.  *Affidavit of Counsel In Support of Plaintiffs' MPSJ,* Exhibit E (Docket No. 40-3, at p. 41).

Roberts then filed a second lawsuit against Plaintiffs, *Roberts v. Fearless Farris Service Stations, Inc., et al.,* CV-05-472-S-EJL (*Roberts II),* on November 18, 2005.  In that case, Roberts alleged only one claim titled "Claim For Benefits" which he brought under ERISA.

Memorandum Decision and Order - 2

Plaintiffs tendered their defense of *Roberts II* on January 20, 2006.  (*Jones Aff.*, Exh. E) (Doc. 40-1, page 39).  Nationwide issued a denial of coverage letter on April 19, 2006, through its counsel. (*Counsel Aff.*, Exh. G).  Roberts prevailed against Plaintiffs and the District Court entered judgment in Roberts' favor on February 6, 2008.  Plaintiffs appealed, and the matter settled while on appeal on April 23, 2009, with Plaintiffs paying $230,000 to Roberts. (*Jones Aff.*, Exh. F) (Docket No. 40-1, p. 42).

The third lawsuit is *Brasley v. Fearless Farris Service Stations, Inc., et al.*, CV 08-173-S-BLW (*"Brasley"*).  Brasley filed a Class Action Complaint on April 17, 2008, on behalf of all present or former employees of Stinker who are or were Plan participants, and the Plan itself.  In his original complaint, Brasley alleged four claims against Plaintiffs under ERISA which include breach of fiduciary duties, a claim for benefits, failure to provide information and sought equitable relief.  Stinker tendered the suit to Nationwide on May 6, 2008.  Nationwide denied Plaintiffs a defense and coverage, again by letter through coverage counsel, on August 14, 2008.

Brasley filed an Amended Class Action Complaint on September 8, 2008, adding additional named plaintiffs.  Stinker forwarded the Amended Complaint to Nationwide on September 10, 2008, but heard nothing further from Nationwide on defense or coverage for that action.   Plaintiffs negotiated a settlement with one named *Brasley* plaintiff in the amount of $120,000.  Plaintiffs did not seek class certification, and the four remaining plaintiffs' claims were recently tried to Chief Judge B. Lynn Winmill.

Chief Judge Winmill issued his Findings of Fact and Conclusions of Law on April 26, 2010.  *Brasley*, (Docket No. 134).  He found that one plaintiff (Elliott) had executed a valid release of the Plaintiffs from all claims under ERISA, and denied Elliott's request for relief.  *Id.*,

Memorandum Decision and Order - 3

¶ 57. As for the remaining *Brasley* plaintiffs (Brasley & Newell), Chief Judge Winmill found Plaintiffs liable to them as Plan Participants and to the Plan itself for breaching Plaintiffs' fiduciary duties in failing to comply with ERISA. *Id.*, ¶ 71. The Court denied the *Brasley* plaintiffs' requests for statutory administrative penalties, however. *Id.*, ¶¶ 98 - 117. Chief Judge Winmill further stayed his decision on a remedy for the Plaintiffs' breach of fiduciary duties as the parties are attempting to craft their own by agreement. *See id.*, ¶ 119.

It is undisputed that Nationwide has paid no defense costs, attorneys' fees or settlement amounts to Plaintiffs for any of these three lawsuits.

**B.     Procedural Background**

Plaintiffs filed this action against Nationwide in state court on August 12, 2008. (Docket No. 1-2). In their Complaint, Plaintiffs allege claims for breach of contract, bad faith and declaratory judgment under both the 2003 Policy and 2005 Policy for the "*Roberts Action*," and for breach of contract, bad faith and declaratory judgment under the 2003 Policy and 2007 Policy for the *Brasley* Action, and for an award of attorneys' fees and costs.

Nationwide removed the action to this Court on September 4, 2008. (Docket No. 1). The parties filed their Scheduling Conference Form - Litigation Plan on October 21, 2008. The Court entered a Case Management Order on January 16, 2009, adopting the parties' Litigation Plan. (Docket No. 16). The parties agreed that all motions to amend pleadings, except for punitive damages, were to be filed by December 1, 2008. (Docket No. 12). The parties thereafter agreed to several extensions of certain deadlines set forth in the original Litigation Plan, which this Court approved. The deadline to file a motion to amend the pleadings, however, was not one of the extended deadlines and Plaintiffs have not sought leave for an extension of that date. The

Memorandum Decision and Order - 4

discovery cut-off was October 23, 2009.  (Docket No. 27).

All parties filed dispositive motions in August 2009.  Nationwide sought judgment in its favor on all claims against it.  Plaintiffs sought partial judgment in their favor on the breach of contract and declaratory judgment claims related to Nationwide's failure to provide defense to the lawsuits.

The Court granted Nationwide's motion with respect to Plaintiffs' claims based on Nationwide's failure to provide a defense or to indemnify for *Roberts II* under the 2005 Policy endorsement, and denied the motion in all other respects.   The Court also granted in part and denied in part Plaintiffs' motion for partial judgment.  Plaintiffs' motion was denied to the extent that they were attempting to obtain judgment for any claim related to *Roberts I* - as such claim was not properly before the Court.  The motion was granted, however, with respect to Plaintiffs' claims for breach of contract and for declaratory judgment based on Nationwide's breach of its duty to defend *Roberts II* under the 2003 Policy and *Brasley* under the 2003 Policy and 2007 Policy.

Plaintiffs also filed the currently pending motion to amend in August, 2009.   Plaintiffs seek leave to amend their complaint to add claims for relief for Nationwide's refusal to defend or indemnify *Roberts I*, include amounts paid in settlement of the *Roberts II* and to one of the *Brasley* plaintiffs, and for punitive damages based on Nationwide's refusal to provide them a defense or indemnification for *Roberts II* and *Brasley*.

## ANALYSIS

Memorandum Decision and Order - 5

A.  **Motion to Amend to Add Claim for Relief Based on Nationwide's Failure to Defend** *Roberts I*

    1.  **Standard of Law**

As the Court noted in its Case Management Order (Docket No. 16), motions to amend filed after the Scheduling Order deadline are governed, not by the liberal provisions of Fed. R. Civ. P. 15(a), but instead by the more restrictive provisions of Fed. R. Civ. P. 16(b). Accordingly, Plaintiffs are required to show "good cause" for the failure to seek the amendment timely. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992); *see also S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.,* 315 F.3d 533, 535-36 & n. 1 (5th Cir.2003) (agreeing with the First, Second, Eighth, Ninth and Eleventh Circuits that Rule 16(b) trumps Rule 15(a) when a motion to amend comes after the deadline set forth in a scheduling order). The focus of a "good cause" inquiry is on the diligence of the party seeking the amendment. *Schultz v. Wal-Mart Stores, Inc.*, 68 Fed. Appx. 130, 132 (9th Cir. 2003).

    2.  **Motion to Amend to Add Claims for Relief Relating to *Roberts I* Lawsuit**

As an initial matter, Plaintiffs first contended that their *Roberts I* claims are not new claims, and that they were seeking to amend merely to "flush out" or "further delineate" claims they believed they had already set forth in the complaint regarding Nationwide's failure to provide a defense of *Roberts I*. The Court rejects this suggestion. There is no hint of a claim in the original complaint in this case based on Nationwide's failure to defend or indemnify for *Roberts I*. The complaint is clearly based only upon Nationwide's response to *Roberts II* (referenced in the

Complaint as the "*Roberts Action*") and *Brasley*.   It is clear that Plaintiffs are requesting leave of court to add additional theories of recovery.

After carful consideration of the issue, the Court cannot conclude that good cause exists for extending the deadline to allow an amendment to add these new claims at this late stage. Initially, Plaintiffs did not address the "good cause" standard applicable to this motion.  In their Reply memorandum, however, they argue that good cause exists because information regarding Nationwide's motivation for denying a defense in *Roberts I* was revealed in discovery after the deadline to amend had passed.  *Plaintiffs' Reply in Support of Motion for Leave to Amend Complaint to Add Additional Causes of Action And to Seek Punitive Damages* (Docket No. 65, p. 11).  Nationwide's motivation in denying the claim is not a necessary element for Plaintiff to have alleged their breach of contract claim.  Plaintiffs' allegations are also not sufficient for the Court to determine the significance of the "new information" and when it was discovered.

Moreover, Plaintiffs conceded during oral argument that their failure to file this motion sooner was the result of a mistaken belief that the claims had been plead in the original complaint.  "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of [leave to amend]."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992).  Thus, the Court concludes that good cause does not exist to allow the amendment to add new claims under these circumstances.  *See Schultz,* 68 Fed. Appx. at 132 (affirming Judge Lodge's finding of no good cause to extend scheduling order to salvage claims not properly plead); *see also Provident Energy Assoc. of Mo. v. Bullington*, 77 Fed. Appx, 427, 429 (9th Cir. 2003) (attorney's misreading of complaint not good cause to justify extension of scheduling order to allow amendment to answer).

Memorandum Decision and Order - 7

Alternatively, the Court agrees with Nationwide that Plaintiffs' proposed amendment would have been futile. *Roberts I* was filed November 5, 2003. Nationwide denied Plaintiffs' request for a defense and coverage on November 16, 2003. The statute of limitations on the breach of contract claim is five years, I.C. § 5-216, which ran on November 16, 2008.

The Court disagrees with Plaintiffs' contention that the filing date of these new claims would relate back to the filing date of the original Complaint, August 13, 2008. Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment to a pleading relates back to the original pleading when the amendment asserts a claim that "arose out of the conduct . . . set out – or attempted to be set out – in the original pleading." Nationwide's failure to provide a defense to the *Roberts I* lawsuit does not arise out of its conduct in failing to provide a defense to the *Roberts II* lawsuit. Although the bases for the claims are, in part, the same – breach of the 2003 Policy – the claims are distinct and involve different lawsuits and different time-frames. In this Court's view, the amendment would not relate back, and accordingly, would be futile.

For the foregoing reasons, Plaintiffs' motion to amend to add claims for relief based on Nationwide's failure to provide Plaintiffs a defense for the *Roberts I* case is denied.

### 3.    Motion to Amend to Update Settlement Amounts in *Roberts II* and *Brasley*

Plaintiffs also request to amend their Complaint to update the settlement amounts that Plaintiffs have paid to date in the underlying litigation, which they seek as part of their damages. Nationwide does not address this request in its responsive briefing. As such, the Court deems the motion unopposed and grants the request. *See Dist. Idaho Loc. Civ. R.* 7.1(e); *United States v. Warren*, 601 F.2d 471, 473 (9th Cir. 1979). Furthermore, the Court also grants the request on its merits. The settlement amounts are not inconsistent with the damage claims Plaintiffs allege in

their original Complaint, (*see. e.g.*, Complaint, ¶ 25, "[P]laintiffs have been damaged in an amount exceeding $200,000, the exact amount to be proven at trial.")  Nationwide cannot be prejudiced by amending the complaint to include these amounts which merely conform to the facts in the underlying lawsuits upon which the current claims are based.  Accordingly, Plaintiffs will be allowed to amend their complaint limited to add the settlement amounts as set forth in their proposed Amended Complaint.  (Docket No. 43-1).

B.     **Motion to Amend to Add a Claim for Punitive Damages**

Plaintiffs move for leave to amend to add a claim for punitive damages for Nationwide's refusal to provide a defense or to indemnify them for either *Roberts II* or *Brasley*.

1.     **Standard of Law**

Federal Rule of Civil Procedure 15(a) encourages the liberal granting of motions to amend pleadings.  However, whether to amend the pleadings to assert a claim for punitive damages is another matter, requiring a different standard as is consistently reflected in the significant case law in this jurisdiction.  *See Todd v. Sullivan Const. LLC,* 146 Idaho 118, 191 P.3d 196 (2008); *Hall v. Farmers Alliance Mut. Ins. Co.,* 145 Idaho 313, 179 P.3d 276 (2008); *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 95 P.3d 34 (2004); *Vaught v. Dairyland Ins. Co.,* 131 Idaho 357, 956 P.2d 674 (1998); and *O'Neil v. Vasseur,* 118 Idaho 257, 256, 796 P.2d 134, 142 (Ct. App. 1990), 796 P.2d 134 (stating that "[p]unitive damages are not favored in the law and should only be awarded in the most unusual and compelling circumstances.").

Claims for punitive damages are substantive in nature and Idaho law is controlling.  *See Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005) ("The question of whether to permit a claim for punitive damages is substantive in nature and accordingly is

Memorandum Decision and Order - 9

controlled by relevant Idaho case law.") (*citing Doe v. Cutter Biological*, 844 F. Supp. 602, 610 (D. Idaho 1994)).

Idaho Code § 6-1604 directs the court to grant a motion to amend to seek punitive damages if, "after weighing the evidence presented, the court concludes that, the moving party has established . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." I.C.§ 6-1604 (2003). An award of punitive damages is permissible only where the claimant proves, "by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." *Id.*

As a matter of substantive law, it is well established in Idaho that punitive damages are not favored and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits. *Manning v. Twin Falls Clinic & Hosp., Inc.*, 122 Idaho 47, 830 P.2d 1185 (1992); *Jones v. Panhandle Distributors, Inc.*, 117 Idaho 750, 792 P.2d 315 (1990); *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986); *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *Linscott v. Rainier National Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980); *see also O'Neil*, 118 Idaho 257, 796 P.2d 134.

An award of punitive damages will only be allowed when the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Manning*, 830 P.2d at 1190 (*quoting Cheney*, 665 P.2d 661). Further, the Supreme Court of Idaho has clearly defined the parameters of such an award, and has stated that "to support an award of punitive damages, [plaintiff] must prove [defendant's] actions toward [plaintiff] constituted an

Memorandum Decision and Order - 10

extreme deviation from standards of reasonable conduct, which was done with knowledge of the likely consequences *and an* extremely harmful state of mind." *Seiniger Law Office, P.A. v. North Pacific Ins. Co.*, 145 Idaho 241, 250, 178 P.3d 606, 615 (2008) (emphasis added). In other words, "[t]he issue revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC.*, 146 Idaho 118, 123, 191 P.3d 196, 201 (2008) (*citing Myers v. Workmen's Auto. Ins. Co.*, 140 Idaho 495, 503, 95 P.3d 977, 985 (2004)).

When the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, a motion to amend to assert punitive damages will not be allowed. *See Strong*, 393 F. Supp.2d at 1026 (finding plaintiff had not established reasonable likelihood of proving by preponderance of evidence[2] "the requisite 'extremely harmful state of mind' and 'extreme deviation from reasonable standards'" because of conflicting evidence) (*citing Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1187 (9th Cir. 2004)).

Idaho state courts have also made clear that, with respect to punitive damages claims, the decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court. *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992) (*citing Hoglan v. First Sec. Bank of Idaho, N.A.*, 120 Idaho 682, 819 P.2d 100 (1991)); *Eddins Constr., Inc. v. Bernard*, 119 Idaho 340, 806 P.2d 433 (1991). In this respect, the

---

[2] *Strong* involved Idaho Code § 6-1604's "preponderance of the evidence" standard before its amendment in 2003. Section 6-1604 now places a higher burden on the moving party, i.e., a requirement for "clear and convincing evidence." *See also* BLACK'S LAW DICTIONARY 596 (8th ed. 2004) ("clear and convincing evidence . . . . This is a greater burden than preponderance of the evidence . . . .") The *Strong* standard remains applicable. That is, if the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, the moving party has not met its burden.

Memorandum Decision and Order - 11

federal courts are in accord with Idaho state substantive and procedural law. *Foman v. Davis*, 371 U.S. 178 (1962).

**2. Discussion**

Plaintiffs argue that "Nationwide's refusal to defend and to indemnify Stinker was outrageous, unreasonable, inconsistent with specific requirements of Idaho law, and was in extreme deviation from both Nationwide's own internal standards as well as reasonable standards of conduct in the insurance industry," and therefore supports an award of punitive damages. *Memorandum in Support of Motion for Leave to Amend Complaint to Add Additional Causes of Action and to Seek Punitive Damages* (Docket No. 43-1, p. 2). After carefully considering the record, the Court concludes that the facts do not reach the level needed to support an award of punitive damages. In particular, the Court finds that the record is lacking the requisite evidence of an "extremely harmful state of mind." *Seiniger Law Office*, 178 P. 3d at 615.

Plaintiffs argue that the facts, established by the evidence and testimony of Nationwide's claims handlers and Plaintiffs' expert testimony, are sufficient for this Court to find a reasonable likelihood that Plaintiffs will prove the requisite 'extremely harmful state of mind' and 'extreme deviation from reasonable standards." The following is a synopsis of Plaintiffs' argument in support of its motion to amend.

First, Nationwide's handling of the claims deviated from its own Best Practices Guidelines including:

- failing to immediately advise and to obtain a non-waiver agreement from the Plaintiffs when the coverage issues arose;
- failing to sufficiently document "the story of the claim up to the minute" by highly

Memorandum Decision and Order - 12

    redacting the claims file materials;

- failing to hold an initial suit conference within 10 days, or at all, of receiving the *Brasley* lawsuit;

- failing to notify the Plaintiffs in writing within 7 days of receipt of the *Brasley* lawsuit of all policies which may provide coverage, as well as policy limitations and questions about coverage.

  Second, Nationwide's own underwriting documents contain an identical scenario as that presented by the claims alleged in *Brasley* as an example of when coverage is afforded, yet Nationwide's agent handling *Brasley* had no knowledge of the underwriting document and did not consider it when he denied the *Brasley* claim.

  Third, Nationwide made an unreasonable decision in refusing to provide a defense or coverage for *Roberts II* and *Brasley* that was made in extreme deviation from the insurance standards and applicable insurance law in Idaho. Further, this unreasonable decision was made with Nationwide's knowledge of and prior experience with handling the *Lawrence* claim, which resulted in Nationwide paying $200,000 in settlement.

  Fourth, Nationwide's unreasonable decision was conscious, deliberate and willful and made with the full knowledge of its consequences to Plaintiffs.

  Fifth, Nationwide took almost three months to issue its coverage response for Plaintiffs' tender of *Roberts II*, over three months for Plaintiffs' tender of the original *Brasley* complaint, and has never responded to Plaintiffs' tender of the amended *Brasley* complaint.

  Most of the underlying facts regarding Nationwide's response and handling of the various tenders are not in dispute in this motion, although Nationwide characterizes the same facts in a

Memorandum Decision and Order - 13

different light. Nationwide's experts dispute that any of Nationwide's actions were unreasonable or fell below the industry standard. Nationwide's expert, Paul Irving, states in his opinion that Nationwide acted reasonably in engaging coverage counsel and in coming to the conclusion that the policies offered no coverage for the *Roberts II* and *Brasley* claims based on their coverage opinions. *See Defendant's Memorandum In Opposition to Plaintiffs' Motion to Amend Complaint to Add Additional Causes of Action and To Seek Punitive Damages,* (Document No. 56) p. 15, (*citing* Affidavit of Paul "Buddy" Irving ("An insurance company faced with difficult or unusual coverage issues should, in my opinion retain competent coverage counsel. Nationwide did so with Mr. Gardner."))

      The Court notes that Nationwide's position that it was reasonable to engage counsel to analyze the complex coverage issues presented by the *Roberts II* and *Brasley* claims is somewhat at odds with Nationwide's position that it clearly had no duty to defend. However, the Court believes that something more than what has been presented is necessary to successfully claim punitive damages under Idaho law. Likewise, although expert testimony that a defendant acted in extreme deviation from the industry standard of care is strong evidence, this Court believes that Idaho law again requires something more than that contained in the record. However phrased, the Idaho law on punitive damages supports an award of punitive damages in limited circumstances, and generally where the defendant insurer offers no justification for its behavior whatsoever and the circumstances presented are more egregious than those presented here. *See, e.g., Myers,* 95 P.3d 977 (punitive damages award affirmed where insurance company took no action to defend insurer with no basis to deny coverage, allowed default judgment to be entered against insurer and caused her license to be suspended); *Silman v. Aluminum Co. of America*, 731

Memorandum Decision and Order - 14

P.2d 1267 (Idaho 1986) (trial court submission of punitive damages to jury affirmed based on expert testimony, defendant's long-standing knowledge of risk and long-standing failure to insure consumers warned of risk); *Garnett v. Transamerica Ins. Services*, 800 P.2d 656 (Idaho 1990) (trial court affirmed for submitting punitive damages to the jury based on defendant's knowledge that it was responsible for paying more, that its refusal to do so caused further damage to the insurer and expert testimony that its defendant's actions constituted extreme deviation from industry standard); *Linscott v. Rainier Nat. Life Ins. Co.*, 606 P.2d 958 (Idaho 1980) (held evidence showed refusal to honor policy "totally unjustified" and bad faith to support punitive damages.)  After carefully studying and analyzing the evidence and controlling law, this Court does not find sufficient evidence of the requisite "bad state of mind" in this record to allow the amendment.

Plaintiffs suggest that *Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977 (Idaho 2004), is instructive in this case and suggests that Plaintiffs' merely need to prove that Nationwide breached its duty to defend in order to make a claim for punitive damages.  Based on *Myers*, Plaintiffs argue that they do not need to establish that Nationwide's breach was in bad faith.  The Court reads the *Myers'* holding differently.  In that case, the plaintiff dismissed her bad faith claim, which may not have been available to her as a "third-party" in any event.  The court in *Myers* clarifies that the existence of a separate cause of action for bad faith is irrelevant to a punitive damages determination based on conduct related to the underlying breach of contract claims.  *Id.* at 984.  Nonetheless, the plaintiff was still required to set forth facts of conduct that may have amounted to bad faith - in other words, both "bad acts" and "bad state of mind."  *Myers* does not create a lower standard for making a claim for punitive damages in the context of an

Memorandum Decision and Order - 15

insurance coverage dispute.

Though Nationwide and its coverage counsel were incorrect in determining Naitonwide's duty to defend in this case, the record does not support a finding of a reasonable likelihood that Plaintiffs can prove both a "bad state of mind" and a "bad act" sufficient to support an award of punitive damages. For the foregoing reasons, Plaintiffs' motion to amend to add a claim for punitive damages is denied.

### VI. ORDER

Consistent with the foregoing Memorandum Decision,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to Amend Complaint to Add Causes of Action And to Seek Punitive Damages (Doc. No. 43) is DENIED in part and GRANTED in part; Plaintiffs are granted leave to amend to add allegations regarding the settlement amounts paid in the underlying lawsuits; Plaintiffs are denied leave to amend in all other respects.

IT IF FURTHER ORDERED Plaintiffs shall file their Amended Complaint setting forth their additional claims consistent with this Court's order within 14 days of entry of this Order.

DATED: **May 17, 2010**.

_(signature)_
Honorable Larry M. Boyle
United States Magistrate Judge